UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORNELIA MARIE CORREIA-MASSOLO,

    Plaintiff,

v.

BED BATH & BEYOND, INC. (STORE #234),

    Defendant.

_____/

Case No. 08-14857

DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [37],
and
GRANTING DEFENDANT'S MOTION TO COMPEL EXECUTION OF
AUTHORIZATIONS [43]**

    Before the Court is Defendant's Motion for Summary Judgment [37]. Plaintiff has filed a Response [41], and Defendant has filed a Reply [42]. After hearing oral arguments on the Motion, the Court entered an Order [49] requiring further briefing on issues raised at the hearing. In response, Plaintiff and Defendant have filed Supplemental Briefs [50] and [51]. Also before the Court is Defendant's unopposed Motion to Compel Execution of Authorizations [43].

    For the reasons stated below, Defendant's Motion for Summary Judgment [37] will be granted in part and denied in part. Defendant's unopposed Motion to Compel Execution of Authorizations [43] will be granted.

**I. BACKGROUND**

    This action follows from events that occurred on August 2, 2008, when Cornelia Marie

Correia-Massolo ("Plaintiff") visited a Bed Bath & Beyond store ("Defendant") located in Ann Arbor, Michigan. Plaintiff has testified that, as she was examining a group of three fans, she raised her hand to check their air flow, and that as she did so, she may or may not have touched one of the fans. One stand-up fan was situated on a shelf that was mounted somewhere below her eye level, and suddenly, that shelf collapsed, and the fan hit Plaintiff in the head. *See* Def.'s Mot. S.J., Ex. A (Pl.'s Dep. at 57-64 ). Alleging damages based on her resulting injuries, Plaintiff filed a state-court tort action, subsequently removed [1] to this Court, alleging that Defendant acted negligently by failing to maintain the premises, failing to inspect for dangerous conditions, and failing to warn of any dangerous conditions. In her Amended Complaint [24], Plaintiff added counts for ordinary negligence and gross negligence as to Defendant's allegedly deficient construction of its in-store shelving units. *See* Am. Comp. at 7-10.

In the pending Motion for Summary Judgment [37], Defendant argues that Plaintiff's premises liability theories cannot be sustained, for lack of evidence that Defendant either created or had notice of a dangerous condition in the store. Defendant further argues that if there did exist a dangerous condition, any such danger was "open and obvious" so as to relieve Defendant of any duty otherwise owed to Plaintiff.

## II. DISCUSSION

"Michigan law distinguishes between a claim sounding in ordinary negligence, and a premises liability claim." *Thorne v. Great Atlantic & Pacific Tea Co., Inc.*, No. 281906, 2010 WL 746422, at *1 (Mich. App. Mar. 4, 2010) (citing *James v. Alberts*, 464 Mich. 12, 18-19 (2001)). A premises liability action involves a "claim that [the plaintiff] was injured by a condition of the land." *James*, 464 Mich. at 18-19. That is, the injury must arise from a condition of the premises, not from an activity engaged in thereon. *Id*. at 19. Despite this distinction, in a premises liability case, a plaintiff must still prove all of the standard elements of a negligence claim. *See Gotautas v. Marion Apartments of St. Clair*, No. 270785, 2006 WL

3334592 at *1 (Mich. App. Nov. 16, 2006).

Under Michigan law, "[t]he requisite elements of a negligence cause of action are that the Defendant owed a legal duty to the plaintiff, that the defendant breached or violated the legal duty, that the plaintiff suffered damages, and that the breach was a proximate cause of the damages suffered." *Schultz v. Consumers Power Co.*, 443 Mich. 445 (1993).

### I. PREMISES LIABILITY

In a negligence action sounding in premises liability, the legal duty owed by a landowner to a visitor varies with the visitor's status on the land. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596-97 (2000). Here, it is not disputed that during Plaintiff's visit to Defendant's retail store, Plaintiff was an "invitee." The Michigan Supreme Court has defined an "invitee" as:

> "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.

*Id.* (internal citation omitted).

Thus, a premises owner owes to an invitee a duty of reasonable care from unreasonable risks of harm caused by dangerous conditions on the property. *Mann v Shusteric Enterprises Inc*, 683 N.W.2d 573, 577 (Mich. 2004); *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 629 (2001). An owner is liable for an injury resulting from a dangerous condition on the premises if the condition was caused by the "active negligence" of the defendant or its employees, or if the defendant or its employees either knew or should have known of the condition. *Clark v Kmart Corp.*, 634 N.W.2d 347, 348-49 (Mich. 2001). Notice may be inferred from evidence that the dangerous condition existed for such a duration of time in which a reasonably prudent owner would have discovered the hazard. *See id*.

Here, Plaintiff has presented no evidence regarding the length of time for which any

dangerous condition allegedly existed. *See id.* Nor has there been any suggestion that Defendant's employees had actual knowledge of any such dangerous condition. *See id.* Rather, the thrust of Plaintiff's premises liability argument is that Defendant "should have known" that the shelf in the fan aisle constituted a dangerous condition that posed an unreasonable risk of harm, and specifically, that Defendant breached its duty to inspect its premises and repair or warn of that hazard. *See Stitt*, 462 Mich. at 596-97. Therefore, at the hearing, the Court directed the parties to brief the issue of Defendant's duty to inspect the premises.

> Defendant has:
>
> presented evidence that a district loss prevention officer is on site in the store for an entire day twice a month doing safety inspections, including inspections of the shelving units and displays. The store also has a shrink and safety captain who designates five hours a week to inspecting the store and insuring safety, including inspections of the shelves and displays. Mr. Goforth [the store manager] testified that no one saw the incident happen. When he responded to the scene shortly after the accident the shelf was already securely back in place. No one can identify who put the shelf back, and no one but plaintiff witnessed the accident. Mr. Goforth also spot-checks the departments once a month. The particular shelves at issue had been in place for two or three months before the accident and there was no evidence of any similar shelf incidents prior to the subject accident. In addition to the above-mentioned routine inspections of the premises and the shelving units, every day the managers on duty ("MOD") perform walks throughout the store on three hour shifts. On the date of the accident, Lori Mitchell was the MOD on duty. She testified she had been performing her walk through when the accident occurred, which included walking up and down the aisles of the store watching the employees work and monitoring their performances. There are two MODs on duty each day covering the store's 50,000 square feet.

Def.'s Supp. Br. at 2-3 (internal citations omitted); *see also* Def.'s Mot. S.J. at 4-5.

In response, Plaintiff cites a portion of the store manager's deposition in which Manager Goforth acknowledged that he had not personally examined the shelf in question on the day of the accident to see if the bracket was in its groove. *See* Pl.'s Resp. at 4. Furthermore, Manager Goforth did not know of any employee who had inspected that particular shelf on that date, and stated that nobody in the store made such bracket inspections on a regular basis. *See id.* Plaintiff also observes that Defendant offered "no testimony that a shrink and safety captain was even

4

employed the day [Plaintiff] was injured." *Id*. at 5. Plaintiff concludes that "Defendant's utter failure to inspect the shelves imposes a duty for which Plaintiff may recover." *See* Pl.'s Supp. Br. at 12.

Here, Manager Goforth's deposition testimony demonstrates that Plaintiff's characterization of Defendant's safety procedures as an "utter failure to inspect" is inaccurate. Plaintiff bears the burden of proof on each of her claims. *See Kar v. Hogan*, 399 Mich. 529 (1976)). However, other than noting that Manager Goforth did not personally inspect the shelf in question on the day of the accident and couldn't name an employee who did, Plaintiff has failed to bring forth any evidence that speaks to the adequacy of Defendant's premises inspection methods. There is no suggestion as to how more frequent inspections would have revealed the alleged shelving defect. Furthermore, even if Defendant's premises inspection procedures could be found deficient so as to constitute a breach its duty of reasonable care, Plaintiff forwards no argument or evidence to show that infrequent store inspections were an actual or proximate cause of her injury. Plaintiff presents only conclusory allegations that Defendant's safety procedures were inadequate, and such conjecture is insufficient to sustain Plaintiff's theory of premises liability at the summary judgment stage. *See Skinner v. Square D Co.*, 516 N.W.2d 475, 480 (Mich. 1994) ("While plaintiffs may show causation circumstantially, the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation . . . [t]o be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation.").

Because Plaintiff's theory of premises liability is based entirely on Defendant's alleged failure to inspect, and because Plaintiff has provided insufficient evidence to survive summary judgment, the premises liability count must be **DISMISSED**.

## II. ORDINARY NEGLIGENCE AND RES IPSA LOQUITUR

In the alternative, Plaintiff has stated a claim arising under a theory of ordinary negligence,[1] arguing that the shelf in the fan aisle was negligently assembled or maintained, leading to its collapse and to Plaintiff's injury. Specifically, Plaintiff has identified the relevant breach of duty as Defendant's alleged "failure to properly have shelving that will hold fans." *See* S.J. Hrg. Tr. at 13:16-13:17.

Defendant initially argued that the ordinary negligence claim is properly disposed on summary judgment because Plaintiff has failed to adduce any evidence of a defect. *See id.* at 13:20-13:25 ("[Plaintiff] has presented absolutely no evidence from any source whatsoever that the shelving was improper. [Plaintiff] does not have a retail liability expert. [Plaintiff] does not have any evidence that we assembled it improperly. [Plaintiff] doesn't have any evidence that we installed it improperly."). However, at the hearing on Defendant's summary judgment motion, Plaintiff argued in response that her lack of evidence is not dispositive because Sixth Circuit precedent suggests the applicability of *res ipsa loquitur* doctrine to the facts of this case. *See id.* at 10-12 (citing *DeBusscher v. Sam's East, Inc.*, 505 F.3d 475 (6th Cir. 2007)). Because *DeBusscher* had not previously been raised, the Court directed the parties to brief the applicability of the case and of the doctrine of *res ipsa loquitur*.

In *DeBusscher*, during the plaintiff's visit to a retail store, she was struck on the head by a portable basketball goal that tipped over because the base of the unit had not been properly secured with ballast. *Id.* at 477-78. Evidence in the record showed that the defendant retailer knew that the base of the basketball goal required a ballast in order to be stable. *Id.* at 481.

---

[1] A claim of gross negligence is also raised in the Amended Complaint, but it is not elaborated in the pleadings. The sole reference to the theory is Plaintiff's statement that Defendant's store inspection procedures involve "nearly a complete lack of oversight bordering on gross negligence." *See* Pl.'s Resp. at 5. Plaintiff's premises liability theory, in which her gross negligence theory is apparently embedded, will be dismissed for the reasons already discussed. For lack of any further elaboration, argument regarding Plaintiff's theory of gross negligence will be considered waived, and that claim will be dismissed as well.

6

Conducting an ordinary negligence analysis,[2] the Sixth Circuit held that the plaintiff had "made the required showing for a claim of *res ipsa loquitur*," and reversed a grant of summary judgment that the district court had entered in favor of the defendant retailer. *See id*. at 481, 482.

In so holding, the Sixth Circuit noted that the "Michigan Supreme Court ha[d] previously issued somewhat ambiguous statements regarding the doctrine of *res ipsa loquitur*," but noted that there has since been a formal acknowledgment of "the Michigan version of *res ipsa loquitur* which entitles a plaintiff to a permissible inference of negligence from circumstantial evidence." *Id*. at 480 (quoting *Jones v. Porretta*, 405 N.W.2d 863, 872 (Mich. 1987) ("The major purpose of the doctrine of *res ipsa loquitur* is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act.")).

> Under Michigan's version of the doctrine of res ipsa loquitur, the plaintiff must establish that
>
> (1) [t]he event must be of a kind which ordinarily does not occur in the absence of someone's negligence[,]
>
> (2) [t]he event must have been caused by an agency or instrumentality within the exclusive control of the defendant[,]
>
> (3) [t]he event must not have been due to any voluntary action or contribution on the part of the plaintiff[, and]
>
> (4) [e]vidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Id*. (citing *Wilson v. Stilwill*, 309 N.W.2d 898, 905 n.5 (Mich. 1981)).

Here, Plaintiff contends, and the Court agrees, that the collapse of a shelf is an "event . . .

---

[2] Here, Defendant disagrees, arguing that "Plaintiff's claim in *DeBusscher* was one for premises liability, not general negligence." *See* Def.'s Supp. Br. at 4. This Court has previously acknowledged that the *DeBusscher* "opinion is not entirely clear on this point." *Bushnell v. Homegoods*, 2010 WL 1286307 at *2 n.1 (E.D. Mich. 2010). However, it appears that the Sixth Circuit's primary analysis applied *res ipsa loquitur* to give rise to a presumption of ordinary negligence (not premises liability). Only as an afterthought did the Sixth Circuit add that "even if [the court] were to analyze [the] claim solely under the state's premises-liability standard, summary judgment was improper." *See DeBusscher*, 505 F.3d at 479, 481.

[the] kind of which ordinarily does not occur in the absence of someone's negligence." *See id.*; Pl.'s Supp. Br. at 6. Thus, the first prong of a *res ipsa loquitur* analysis is satisfied.

As to prong two, Plaintiff emphasizes that even if "the *fan* that fell was not in the exclusive control of Defendant, it cannot [be] argue[d] that the *shelves* were not in Defendant['s] exclusive control. The shelves must be put together by [Defendant] with the knowledge that products will be removed and replaced, and that the shelves [must] be securely assembled." *See* Pl.'s Supp. Br. at 11 (Plaintiff's emphasis). In its discussion of *res ipsa loquitur*, Defendant fails to address the element of "exclusive control." *See* Def.'s Supp. Br. at 4-7. At the summary judgment state, and in the absence of an argument to the contrary, the Court accepts Plaintiff's suggestion that Defendant had exclusive control over the shelves it had installed as fixtures in the store. *Cf. DeBusscher*, 505 F.3d at 481 (finding that the defendant retailer had "maintained exclusive possession of the basketball goal" displayed as a floor model in its store prior to the accident in that case).

In this case, it is prong three that is at the crux of the question of availability of *res ipsa loquitur* to Plaintiff's case. Defendant argues that "the evidence shows that plaintiff herself touched either the base of the fan or the shelf itself just prior to the accident." *See* Def.'s Supp. Br. at 5-6. Defendant also notes that "[t]he particular shelves at issue had been in place for two or three months before the accident and there was no evidence of any similar shelf incidents prior to the subject accident." *Id.* at 2. In her brief, Plaintiff denies that she touched the shelf itself, and argues that "[t]ouching a fan on a shelf . . . is not an action by Plaintiff that contributed to the shelf collapse." *See* Pl.'s Supp. Br. at 13-14. In her deposition testimony, Plaintiff reported: "I just put my hand to check the – the air flow, how strong it felt, that kind of thing, and I probably very lightly touched it with my fingers and suddenly saw the shelf collapse." *See* Def.'s Mot. S.J., Ex. A at 17 (Pl.'s Depo. at 57:21-57:24). Plaintiff's testimony is the only evidence on the question of whether she acted voluntarily to contribute to the shelf collapse. When the Court views this evidence and draws all reasonable inferences in Plaintiff's favor, and

8

without weighing the evidence or making credibility determinations, the Court finds it possible that a reasonable jury could find that Plaintiff's actions did not constitute a voluntary contribution to the collapse of the shelf. *See Dean v. Byerley*, 354 F.3d 540, 546 (6th Cir. 2004) (reciting the standard of review on a motion for summary judgment). Thus, at the summary judgment stage, Plaintiff has made an adequate showing of a genuine issue of fact to be tried on prong three of a *res ipsa loquitur* theory of negligence.

Finally, as to prong four, it appears that evidence of the true explanation of the event was more readily accessible to the defendant than to the plaintiff. Defendant argues that Plaintiff was the only one who witnessed the event. *See* Def.'s Supp. Br. at 6. Plaintiff counters that only Defendant would have known the condition of its shelving before the accident. *See* Pl.'s Supp. Br. at 14. More importantly, the parties seem not to dispute that the collapsed shelf was reconstructed immediately after the accident, and before Manager Goforth arrived on the scene.[3] No photographs were taken to preserve the scene, thus precluding any later examination of the evidence by any party. Drawing all reasonable inferences in Plaintiff's favor, and assuming as true, for summary judgment purposes, Plaintiff's assertion that a store employee reconstructed the shelf after its collapse, the Court finds that Defendant may have accessed and controlled evidence that could have demonstrated the true explanation of the event.

In summary, the Court finds that the first prong of a *res ipsa loquitur* analysis is satisfied as a matter of law. With due regard to the arguments raised in the parties' supplemental briefs, and with deference to the Sixth Circuit's ruling in *DeBusscher*, the Court further finds that issues of fact exist as to the remaining three elements of *res ipsa loquitur* such that this case should proceed to trial on those issues.

### III. CONCLUSION

---

[3] Lori Mitchell, the manager on duty at the time of the accident, has no recollection of the condition of the shelf when she arrived.

For the reasons discussed above, and the Court being fully advised,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [37] is **GRANTED IN PART AND DENIED IN PART**, as follows:

- Defendant's motion is **GRANTED** as to Plaintiff's claim for premises liability based on a failure to inspect, and **GRANTED** as to Plaintiff's claim for gross negligence. Those claims are hereby **DISMISSED**.
- Defendant's motion is **DENIED** as to Plaintiff's claim for ordinary negligence brought under the doctrine of *res ipsa loquitur*. The case will proceed to trial on the relevant issues.

**IT IS FURTHER ORDERED** that Defendant's unopposed Motion to Compel Execution of Authorizations [43] is hereby **GRANTED**, as follows: Plaintiff is ordered to execute authorizations for the release of records from Genesys Regional Medical Center and Gentiva Home Health Services on or before **FRIDAY, OCTOBER 15, 2010**.

**SO ORDERED.**

S/ARTHUR J. TARNOW
Arthur J. Tarnow
Senior United States District Judge

Dated: September 27, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 27, 2010, by electronic and/or ordinary mail.

S/LISA M. WARE
Case Manager